RHOADES v. AVON. Counsel? Good afternoon. Howard Posner for the appellants. This case presents a question as to whether a court should exercise discretion over a declaratory relief action when parallel actions are pending in the trademark trial and appeal board and one party has threatened to sue the other. Counsel, you're Rhoades, correct? Rhoades and Dermineau. Could you just speak a little bit louder? You're pretty clear, but a little louder would be... I will do my best. I haven't much of a voice today. Maybe I can, you know... I'll move closer to this microphone. Is that better? That's a little better. You said that you described these as parallel actions. They're actions that have much of the same subject matter between them. Why would you characterize them as parallel? For that reason. Just that they have overlapping issues? Yes. They can't grant the same relief, can they? No. That's the point of the action, of course, that you file the declaratory relief action because the trademark trial and appeal board can't grant the relief. It can't give final resolution of any question. What does that mean? I remember reading that in the materials and I don't understand exactly what that board does. The trademark trial and appeal board deals with the question of whether registration of the trademark should be granted. It doesn't deal with questions of infringement. It doesn't deal with damages. It doesn't deal really with anything else. And its decision is a decision only if the parties wish it to be. Somebody can go, one of the parties or both of the parties, can go to the district court and file a lawsuit in which the trademark trial and appeal board's decision is relevant but not entitled to any particular deference. It's not binding? No. So what do they do exactly? They decide if a company can use a particular trademark except it's not controlling on the courts? Well, what it decides is whether the trademark's registration is good. What does that mean exactly? That allows the trademark to have an official registration. Well, what's that good for? The trademark's registration does not entitle, it isn't a decision about whether the trademark infringes on another trademark, for example. Or whether it can. Why would they ever deny registration? Explain to me. Well, I suppose if you walk into the, are you talking about the trademark trial and appeal board? Yes. Like in this case. Why would they deny registration? Because it's confusingly similar to. Yes. If you devised a soft drink that had the name Coca-Cola on it, obviously, and it had the same logo type, the trademark trial and appeal board isn't going to let the new Coca-Cola company register that trademark. What if they had cooler cola and it was a different typeface? It didn't have that pretty script that Coca-Cola uses. And they said, well, it's not that confusing. It's all right. And they registered it. Could Coca-Cola still win an infringement action? Yes. And what if they said, it's not all right. It's confusing. We're not going to register it. Could cooler cola still get a deck action that says the trademark's okay and they're not infringing? I believe so, yes. What does anyone go to that board for? It's a very good question. The board, I'm sure, is a useful thing if all you want to do is resolve the registration issue, although I'm sure nobody does. Let me ask you, are there other grounds besides confusion that would allow the board to deny registration? I'm sure there are. I don't practice in front of the trademark trial and appeal board, so I'm not sure I can answer that. Do they issue decisions? They issue decisions, I believe, about whether the registration is valid. Do they publish them or anything like that? That I don't know. I do know that their decision is available to a trial court in a declaratory relief action such as this one, if it wants it. The questions I'm being asked here, I think, go to the issue in the case. The district courts and the, I'm sorry, the circuit courts that have looked at whether a trial transfer and appeal board case can be, in effect, preempted by a declaratory relief action, look to the limitations of the trial transfer and appeal, sorry, trial, trademark, trial and appeal board, and say these decisions aren't worth very much. It's exactly what this panel is asking me about. Do I have this right that your choice is basically bring a deck action and get the courts to take jurisdiction and you find out whether you can sell your cosmetics safely or not? That's correct. Or else just go ahead and sell them and get sued in a bet-the-company lawsuit by Avon? That's correct. And the only way to avoid that is with the deck action. You can't avoid it with the trademark trial and appeals board. That's right. The trademark trial and appeals board is not going to stop an infringement suit. So the question here, then, is does the court have, the trial court have discretion not to hear the case? Discretion, of course, is defined by precedent. And so the question before this court now is are the decisions in PCH versus Pioneer Healthcare and Goya Foods versus Tropicana persuasive authority? Do I have this right that the First and Second Circuits in those two cases have said you can proceed in a deck action without waiting for that board? Not only that. And no circuit has said the opposite, just a couple of published and unpublished cases? That's right. The First and Second Circuits have said not only that you can proceed, but they reversed district court rulings that said that the party could not. The only cases that have held otherwise are district court cases. Well, you know, in the First Circuit case, they sent it back to the district court to exercise discretion. They said they didn't say the court has to take deck relief. I don't know that they said that in as many words, but I think it would be a twisted reading on the district court's part to read that decision and say, no, I don't think so. That's right. I'm just wondering, would there be any basis on which the district court might exercise its discretion not to hear the deck relief action when there's a proceeding pending before the TTAB? Well, there might be. The case we have here is so similar to the PCH case, and, I mean, it's virtually on all fours, and it's very similar to the Goya Foods case, so I haven't really given much thought to the question of some other case in which the court might be able to exercise discretion. Well, we're talking about, you know, there is discretion. So, I mean, once the court has jurisdiction, you know, constitutional jurisdiction, there's a controversy between the parties, and there's some dispute here about when the threat of litigation was made. But putting that aside for a minute, you know, Borhard talks about things the district court ought to look to, and I was looking at them and trying to figure out how they would apply here, and it looks like they all counsel in favor of allowing the deck relief action to go on. I believe they do. I think when you have a different sort of administrative body that has more authority and has more deference given to its decisions, some of the decisions talk about heavily regulated industries, but you don't have that here. And so I think in just about every case, really, I can't think of a case where a declaratory relief action would be improper and jurisdiction shouldn't be exercised. I think that's the message of PCH and Goya. Do you want to save some time for a break? Yes, I do.  Thank you, counsel. Good afternoon. May it please the Court. My name is Michelle Graham, and I'm appearing here today on behalf of the appellee, Avon Products. I couldn't figure out what the district judge was talking about when he talked about this bad motive. Well, Your Honor, I think the judge was quite clear, and his ruling was also quite clear when he said the declaratory judgment action was brought for an improper motive. I know he said that, and I can't figure out what motive there is that's shown by the record that's improper. Well, having been representing Avon over the past six years, beginning with the 2001 opposition proceeding brought before the TTAB, I can recount for you what's in the record as to the pattern. How about if you just tell me in 25 words or less, or maybe 100 words or less, what the district judge meant by the word improper? What motive was shown that the district judge had decided was improper? I believe the district judge reviewed our papers, reviewed the record, and saw the gamesmanship that Mr. Roach encountered. You're just talking gobbledygook. You say look at the record, there's gamesmanship. The record is boxes and boxes. I'm giving you a chance. Explain to me what is there that's bad. Third try. Your Honor, days before the complaint was filed, the parties were negotiating earnestly for settlement of not just the U.S. proceedings, but the global proceedings, which could not be resolved in any single forum in the United States. The parties had a drafted settlement agreement, which was 90% agreed to by both sides. On the March 24th, I thought what had happened was Avon said, you quit selling any cosmetics under that name, it's too much like our name, or we're going to sue you. No, Your Honor, I can attack each one of the fabricated, purported evidences of threat that were placed in the First Amendment complaint. You wouldn't threaten to sue them if they didn't stop selling the cosmetics? My client has never threatened to sue Dean Rhodes or Dermineau or anyone involved with his company, Your Honor. So the allegations in the Second Amendment complaint are just false? They are false. We take them as true, though. Pardon me? We take them as true. Even taking those things? We take the allegations in the Second Amendment or First Amendment complaint as true, even where there's a conflicting declaration, it's because the district court never conducted an evidentiary hearing. Understood, Your Honor, but even so. So we take everything as true, says that you guys threatened him with litigation? Well, we submit respectfully, Your Honor, that we have never sued Mr. Rhodes or his company or his counsel with any trademark infringement lawsuit. We have never sued? That's a different answer to a different question. Or threatened a suit. Or threatened a suit. But how do we get around what, if we're forced to take the complaint at face value, how can we accept your statement of the contrary? Well, under the Declaratory Judgment Act, the court is afforded great discretion in deciding whether or not to entertain a declaratory relief action. Don't we have to have something in the record that supports the discretion? It can't just come out of thin air. Well, I believe, Your Honor, in the judge's ruling, he specifically states that he is relying upon discretionary authority afforded him under the Declaratory Judgment Act. Well, I know he has authority, but we have to know why he's exercising his discretion the way he did exercise it. We know he has authority, but we have to know what the basis for exercising it was. The complaint was filed with an improper motive, and that improper motive was that it was filed days before Mr. Rhodes was to sit for his deposition. We were not going to extend that date any longer. We had been delaying and delaying for months. He does not want to sit for his deposition. So that complaint was filed. I submit. We would have to have a deposition taken in the deck relief action. If we ever get that far, Your Honor. You don't think you can get a deposition of Mr. Rhodes in the Federal District Court? Well, Your Honor, there are ---- I bet you could get a deposition of Mr. Rhodes in a matter, very shortly and very quickly. Well, Your Honor, as stated in the record, there are proceedings pending outside of the United States, and we have yet to get his deposition. I don't understand. You're saying we want to take his deposition, but you don't want the deck action to go ahead. Well, if there's no action in district court, there's no action to do a deposition  Yes, there is, Your Honor. If there is, you just notice it up. The case should go back to the Trademark Trial and Appeal Board where it belongs, where it was brought in 2001. All of the cases are now consolidated. They were consolidated in 2005. So a single file---- Do they do depositions there? Yes, they do, sir. And are those decisions binding on whether there's an infringement or not? They are very instructive. In fact, we cited a case---- I asked you if they were binding. Are they? They are not binding, but they are instructive. Tell me, incidentally, so you agree with your opposing counsel that they're not binding? They are not binding, but they are instructive and persuasive authority, Your Honor. Now, tell me something about authority in this case. It looked to me as though there were two circuits, the first and the second, that said your adversary wins. There are no circuits that say you win. You cited some published and some unpublished district court authority. Do I have the authorities right? Well, Your Honor, I think we've distinguished very nicely in our briefs the PHC case and the Goya case. Is there a circuit that goes your way? The circuits are split. What's the circuit that goes your way? Where's the split in the circuit level? Well, here in the Ninth Circuit, Your Honor, the City Caster's case that we cite---- Is that a Ninth Circuit case? It's the, I believe, the Northern District of California. Oh, it's a district court. You understand I'm not asking about district court and circuit court in the same breath. I'm trying to distinguish between circuit and district court. We have not found a Ninth Circuit case, Your Honor. Any other circuits split? The cases go the wrong way as far as you're concerned. Well, the district court cases in California, there are district court cases, and we cite one of them. No, but answer the question. There's no circuit split. Correct or not correct? Within the country, there is. The First and Second Circuits go one way, and Third and Fourth, Seventh Circuits go another way. Oh, what are the Third, Fourth, and Seventh? Pardon me? There are circuit cases the other way? There were other district court cases. No, district courts are not circuit courts. You must know that. Are you confused on that, or do you think we're going to be confused? I would like to distinguish the two circuit cases that they have cited as being contrary. Well, why don't you accept the proposition there is no circuit split? The only circuits that are ruled on this go against you. Where there is a threat, Your Honor, there is no threat here. Those cases, the PHC case and the Goya Foods case, involved evidence of threat. Your problem is that you want us to assume just the opposite of what we're required to do. You want us to assume that there was no threat. Well, I respectfully submit that there was no threat. We have to take the allegations that we just mentioned a minute ago in the First Amendment complaint as true. With that understanding, Your Honor, the district court, as it may under the Declaratory Judgment Act, has the discretion to decide whether to take or to dismiss the action. And the district court, Judge Rael, chose to dismiss because of the palpable bad faith of Mr. Rhodes throughout these various proceedings. Okay. Thank you.  Thank you, Your Honor. I'm opening. I just opened the excerpts of record at random. And it looks like threats all over the place, as well as a lot of name calling. Either stop using the mark or we'll sue you. Your Honor, if I may address those in turn. The September 2003 conference, where I was present, my client was present. He's seated right here at the table, Your Honor. Mr. Rhodes and his wife were present. It's curious that neither Mr. Rhodes nor his wife put in an affidavit to say what happened at that meeting. But I did. And I can state before you today, as a member of this bar, my client never pounded the table and never uttered those words. The counsel who put in the affidavit was not in attendance. Nor was he even representing Mr. Rhodes at that time. We take Mr. Rhodes' version of what happened as true. What about this letter from you? That doesn't require anyone to call anyone a liar. It's your own letter. Your Honor, that letter. I think it's your letter, isn't it? You're Michelle Graham. I am Michelle Graham. I did write that letter. And that letter was written in furtherance of settlement negotiations, as is borne out by the heading at the top of that letter, written pursuant to Federal Rule of Evidence 408. You create your own privilege. And Rule 408 gives you no privilege when the purpose of the letter is to show that you threaten litigation. Unless they caved in to your demand. However, Your Honor, if that letter is read in context and you read the entire letter, that is not a threat. That is a settlement proposal. It is a very detailed settlement proposal, specifying the manner in which we would agree to coexist, if you will, with Mr. Rhodes. So far from being a threat, it was written in furtherance. We won't give you the luxury of a prolonged phase-out period. You've got to quit using dormant brand right now. There was no threat of federal litigation in that letter, Your Honor. We reserved our rights to take whatever actions we deemed necessary or appropriate in the event that settlement did not transpire, as we had been negotiating a settlement for the prior four years. Well, you can sue them or you can break their legs. I mean, what action is appropriate when people infringe on a mark? Under the Lanham Act, a trademark holder has two methods of enforcing their rights. The first one is in the TTAB by bringing a cancellation or an opposition proceeding, and the second is by going directly into federal court. The TTAB does entertain infringement actions and issue injunctions? No. The issue before the TTAB is the registrability of a particular trademark. We decided to proceed in the TTAB because that is the much more efficient and cost-effective manner to ---- Has the TTAB taken any action on the ---- on the cancellation or what is it, opposition proceedings? All of the proceedings, which are now consolidated, so there is a single action. The proceedings have been stayed pending the outcome of this case. Oh. It says here, and this is in your words, so it doesn't really matter if you think that the other side is a bunch of liars. It says, Please be advised that if your client is unwilling to accept the terms above, we will immediately proceed with all pending proceedings and initiate whatever additional proceedings or litigation is necessary to protect Avon's trademark rights. I thought additional litigation means if you don't do what we say, we're going to sue you. Your Honor, we're ---- It's a perfectly legitimate thing to say, but is there ---- am I misreading the words? The words as you read them are certainly contained in my letter, but again I submit that the letter must be read in the context of ongoing settlement negotiations, which had been going on for years, Your Honor. And the reason why they were going on so long was because a myriad change of counsel on the part of Mr. Rhodes necessitated us to revisit the same issues over and over again. What does any of that matter? I mean, if you didn't want to negotiate for years, you could have sued him years ago. But the point is, Your Honor, we did not. We chose to enforce our rights in the TTAB, which is where this case belongs, as Judge Reale ---- You just told me you can't enforce your rights in the TTAB. We can determine whether or not his marks warrant registrability. All right. Thank you, counsel. Thank you. That's my colleague. I don't have your letter here. Counsel? Like Judge Kleinfeld, I wasn't able to figure out what the district judge meant by improper motive, and I thought I would spend a moment reminding the Court that we are asking to have this case heard by a different judge on remand. I think when we have essentially a three-line, 20-word ruling and ---- Well, sometimes we get just a one, you know, from any district court judge it's possible, just the motion granted, you know. Yes. I stopped in mid-sentence. What I was going to say was when the judge in such a short ruling uses the expression improper twice, he has, it seems to me, formed an opinion not only about the merits of the case, but about the merits of the litigant. And it's a situation with this judge particularly, I think, that we should start with a clean slate on remand. If the Court has no questions, I'll wrap up. Counsel? Rhodes v. Avon is submitted. We'll hear Walker v. Yarbrough. Thank you.
judges: Noonan, Kleinfeld, Paez